**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MAINE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| JEFFREY J. ROCKWELL | ) | |
| d/b/a  Rockwell Productions | ) | |
| f/d/b/a Rockwell Productions, Inc., | ) | Case No.:  15-20583 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## MEMORANDUM OF DECISION

This case examines the permanence of an exemption claim in proceeds resulting from the sale of the debtor's homestead in a converted chapter 7 case in a jurisdiction with a temporal limit to its homestead proceeds exemption, also known as a "vanishing" exemption.  The applicable exemption for Maine debtors who seek to protect the proceeds from the sale of their homesteads requires that the proceeds be reinvested in a residence within six months of the sale.  Here, Mr. Rockwell filed for chapter 13 relief, received proceeds from the sale of his house during the pendency of the chapter 13, but failed to reinvest all of the proceeds in a new residence before he converted his case to one under chapter 7 and before six months passed from the date of the sale.  The chapter 7 trustee lodged an objection to Mr. Rockwell's claim of exemption pursuant to Fed. R. Bankr. P. 4003(b) and a trial was held on May 22, 2018.

For the reasons set forth below, the trustee's objection is overruled.

**I. Facts.**[1]

In 2001, Mr. Rockwell bought the real estate and buildings located at 24 B Street, South Portland, Maine. When he filed for relief under chapter 13 of the Bankruptcy Code[2] on August 19, 2015, he owned the property and resided there. On his bankruptcy schedules, Mr. Rockwell claimed he was entitled to an exemption of $47,500 of equity in the property pursuant to the Maine homestead exemption statute, 14 M.R.S.A. § 4422(1). This court confirmed Mr. Rockwell's chapter 13 plan of reorganization in November 2015 and his plan anticipated that he would pay the holder of the first mortgage on that property directly and would retain the B Street property. However, by December of 2016, Mr. Rockwell sought permission to sell the B Street property for $160,000 and contribute any non-exempt proceeds of the sale to his chapter 13 plan. At the hearing on the motion to sell the B Street property, the chapter 13 trustee, in his words, "mildly" voiced his concerns about the sale price but expected the court to grant the motion to sell as being a proper exercise of Mr. Rockwell's business judgment. On January 12, 2017, the court entered an order authorizing Mr. Rockwell to sell the B Street property and to pay from the proceeds of the sale (1) his ordinary and customary closing expenses, (2) the balance due to U.S. Bank, and (3) to contribute any non-exempt proceeds of the sale to his chapter 13 plan.

The closing for the sale of the B Street property occurred on March 6, 2017, and after the payment of the closing costs and the first mortgage obligation, the amount of $51,682.87 remained and was distributed between Mr. Rockwell ($47,500) and the chapter 13 trustee ($4,182.87). The chapter 13 trustee never objected to Mr. Rockwell's exemption claims and on

---

[1] These facts are taken from the parties' stipulations, Mr. Rockwell's May 9, 2018 declaration, the testimony provided and exhibits admitted into evidence at the May 22, 2018 trial, and the various filings in this matter.

[2] All references to the "Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq. All references to a "Rule" are to the Federal Rules of Bankruptcy Procedure.

August 7, 2017, Mr. Rockwell converted his case to one under chapter 7.  As of the conversion date, Mr. Rockwell had spent $18,806.23 of the cash proceeds of the sale, leaving a balance of $28,693.77.[3]  Upon conversion, the Federal Rules of Bankruptcy Procedure permitted the chapter 7 Trustee an opportunity to object to Mr. Rockwell's exemption claims, Fed. R. Bankr. P. 1019(2)(B), 4003(b), and on December 4, 2017, he did so after the court granted his motion to enlarge the time to file such objections, to which Mr. Rockwell consented.  Mr. Rockwell resided at the B Street property until September 2017, when he established his residence at 25 Bancroft Court, Portland, Maine, which was owned by Lorraine H. Flint.  Mr. Rockwell has never held an ownership interest in the Bancroft Court property.

## II.  Jurisdiction and Venue.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, and the general order of reference entered in this district pursuant to 28 U.S.C. § 157(a). D. Me. Local R. 83.6(a). Venue here is proper pursuant to 28 U.S.C. § 1408(1). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(B).

## III.  Burden of Proof.

As the objecting party, the burden of proof is on the chapter 7 trustee to establish that Mr. Rockwell is not entitled to an exemption in the $47,500 cash proceeds. Fed. R. Bankr. P. 4003(c); In re Gourdin, 431 B.R. 885, 891 (B.A.P. 1st Cir. 2010); *see also* In re Chaney, Case No.15-20725, 2016 WL 4446007, at *1 (Bankr. D. Me. Aug. 23, 2016); In re Toppi, 378 B.R. 9, 11 (Bankr. D. Me. 2007), as amended (Nov. 15, 2007); In re Cole, 185 B.R. 95, 96 (Bankr. D. Me. 1995).

---

[3] Mr. Rockwell's May 9, 2018 declaration, ¶ 10, Rockwell Trial Exhibit G.

**IV. Positions of the Parties.**

The chapter 7 trustee objects to Mr. Rockwell's exemption claim on the basis that Mr. Rockwell failed to reinvest the cash proceeds from the sale of his B Street property in a new residence within six months of the sale of the property, as required by 14 M.R.S.A.§ 4422(1)(C) which provides: "That portion of the proceeds from any sale of property which is exempt under this section shall be exempt for a period of six months from the date of receipt of such proceeds for purposes of reinvesting in a residence within that period." [4] Given the temporal limits of the Maine exemption, the chapter 7 trustee argues, the cash proceeds lost their exempt status when Mr. Rockwell failed to reinvest in a residence in a timely manner. Therefore, these funds must be delivered to the chapter 7 trustee to be administered under chapter 7 of the United States Bankruptcy Code.

Mr. Rockwell counters that the chapter 7 trustee's objection must be overruled because (1) the vanishing nature of the six month rule of 14 M.R.S.A. § 4422(1)(C) runs counter to the Code, (2) the objection disregards controlling First Circuit authority, (3) Mr. Rockwell's right to a homestead exemption was fixed on the date he filed for bankruptcy relief, and (4) Mr. Rockwell's investment of proceeds into the Bancroft Court property is protected under 14 M.R.S.A. § 4422(1)(C), notwithstanding his admission that he has no ownership interest in that property.

---

[4] The "proceeds" exemption in 14 M.R.S.A. § 4422(1)(C) was added to the Maine homestead exemptions by the Maine Legislature by P.L. 1989, c. 286, § 1. Prior to then, a debtor was permitted a homestead exemption in real estate only, not in cash proceeds from the sale of a residence.

4

**V. Discussion.**

There is no specific controlling authority from the United States Court of Appeals for the First Circuit on the exact issue presented in this case and there is no uniform approach among the courts to vanishing state law homestead proceeds exemptions in bankruptcy. To address the issue here this court must examine (1) the effect the bankruptcy filing has on the debtor's property, (2) whether the conversion in this case is of any consequence, and, most importantly, (3) how courts treat vanishing exemptions in chapter 7 cases.[5]

### A. Effect of Bankruptcy on the Debtor's Property.

Upon the commencement of a bankruptcy case, an estate is created which encompasses all of the debtor's property, even property that the debtor may later seek to claim as exempt. § 541(a)(1) and (2); Owen v. Owen, 500 U.S. 305, 308 (1991); In re Reed, 184 B.R. 733, 737 n. 5 (Bankr. W.D. Tex. 1995). The Code permits a debtor to exempt or exclude certain property from the bankruptcy estate which would otherwise be available for distribution to creditors or for administrative expenses. § 522. Owen v. Owen, 500 U.S. at 308 (1991) ("An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor."); Nealon v. Matthews (In re Nealon), BAP No. MW 15-035, 2016 WL 312409, at *6 (B.A.P. 1st Cir. Jan. 20, 2016). Exemptions are critical to a fundamental underpinning of the Code: providing a debtor the opportunity for a fresh start. Schwab v. Reilly, 560 U.S. 770, 791 (2010). Congress permitted each of the states to adopt the federal exemption scheme set forth at § 522(d) or to reject the federal scheme in favor of state law exemptions. *See* § 522(b)(2). The Maine legislature, along with over 30 other state legislatures, "opted out" of the federal exemptions. 14

---

[5] The treatment of these exemptions in chapter 13 cases is not relevant here given that the objection to Mr. Rockwell's exemption was raised in the chapter 7 portion of his case.

5

M.R.S.A. § 4426; Hon. W.H. Brown, L. Ahern, N. Fraas MacLean, Bankruptcy Exemption Manual, § 4:2 (2018). Thus, a Maine debtor must look to Maine state law for homestead exemptions in bankruptcy proceedings. Chaney, 2016 WL 4446007, at *1. Under Maine's homestead exemption, Mr. Rockwell can protect up to $47,500 in real or personal property that he or his dependents uses as a residence. 14 M.R.S.A. § 4422(1)(A). It also allows the proceeds from the sale of exempt property to retain its exempt status for six months for purposes of reinvesting in a residence. 14 M.R.S.A. § 4422(1)(C).

      Upon filing for bankruptcy relief, Mr. Rockwell claimed the full $47,500 exemption in his B Street property in accordance with Fed. R. Bankr. P. 4003(a) and 14 M.R.S.A. § 4422(1)(A). He then proposed a chapter 13 plan which was premised, in part, upon his retention of the B Street property. Time passed, and circumstances changed for Mr. Rockwell. He sought court permission to sell the B Street property and, after the chapter 13 trustee weighed in over the treatment of the non-exempt portion of the sale proceeds, this court approved the sale by a final, non-appealed order. The closing occurred, and the chapter 13 trustee accepted $4,182.87 in funds as being the non-exempt component of the sale proceeds while Mr. Rockwell received $47,500 as exempt proceeds.   A little over five months after the sale of the B Street property, Mr. Rockwell converted his case to one under chapter 7 and the chapter 7 trustee was appointed to the case. At no time during the chapter 13 portion of the case did the chapter 13 trustee challenge the exempt status of the $47,500 proceeds. However, four months after conversion, and after the six-month time limitation in 14 M.R.S.A. § 4422(1)(C) expired, the chapter 7 trustee objected to Mr. Rockwell's exemption in the cash proceeds. He asserts that in keeping with the specific wording of 14 M.R.S.A. § 4422(1)(C), the passage of more than six months

6

after the sale of the B Street property transformed the exempt cash proceeds into non-exempt assets which must be included in the bankruptcy estate.

### B. Effect of Conversion from Chapter 13 to Chapter 7.

When Mr. Rockwell converted his case, he brought other Code sections into play. Section 348(a) provides that the conversion of a case from one chapter to another under the Code does not change the date of the filing, the case commencement, or the order for relief for purposes of the converted case.[6] So although Mr. Rockwell converted his case to chapter 7 in 2017, the 2015 filing date is the appropriate time to use to determine his rights to exempt proceeds. It is also an important date in the determination of the extent of the property of the bankruptcy estate in the converted case. In re Tracy, 28 B.R. 189, 190 n. 1 (Bankr. D. Me. 1983). Section § 348(f)(1)(A) provides that so long as the debtor does not convert a case in bad faith, "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." Bad faith is not alleged here, therefore, prior to considering the issue of exemptions, property of Mr. Rockwell's chapter 7 estate included the property he scheduled in his chapter 13 filings which was still in his possession upon conversion. When Mr. Rockwell filed his chapter 13 case in 2015, he owned his residence but when he converted his case to chapter 7 in 2017, only $28,693.77 of the proceeds from the homestead's sale remained in his control and only this amount was, before considering exemptions, property of the chapter 7 estate.[7]

---

[6] There are exceptions to this which do not apply in this case. § 348(b), (c).

[7] Mr. Rockwell spent $18,806.23 of the homestead proceeds before the conversion date, leaving $28,693.77 of the homestead proceeds in his possession.

That leaves the ultimate question: whether the $28,693.77 is exempt property or whether Mr. Rockwell's failure to reinvest it within six months of the sale date caused its protective status to evaporate.

**C. Vanishing Exemptions in Proceeds in Chapter 7 Cases.**

Courts differ in how vanishing exemptions in homestead proceeds are addressed in the chapter 7 context. See, Exemption of Proceeds of Voluntary Sale of Homestead, 46 A.L.R. 814; Danielle Nicole Rushing, Use It or Lose It: Grappling with Classification of Post-Petition Sale Proceeds Under Chapter Seven Bankruptcy for Consumer Debtors in the Lone Star State, 47 St. Mary's L.J. 901, 915 (2016); Stephen W. Sather, Fifth Circuit Walks Back on the Disappearing Exemption Case, Am. Bankr. Inst. J. 38, 38 (2018). Most agree that the facts and law in place on the petition date determine the rights of a debtor to exemptions. White v. Stump, 266 U.S. 310, 313 (1924); Myers v. Matley, 318 U.S. 622, 628 (1943); In re Cunningham, 513 F.3d 318, 324 (1st Cir. 2008). This principle is part of the snap-shot rule.[8] In re Awayda, 574 B.R. 692, 695 (Bankr. C.D. Ill. 2017); In re Williams, 515 B.R. 395, 402 (Bankr. D. Mass. 2014). However, courts disagree over the scope of the snap-shot; over what exactly the snap-shot captures.

Some hold that the snap-shot rule requires that exemptions to which the debtor is entitled in homestead proceeds must be determined by examining the exact scope of the exemption as of the time of the bankruptcy filing and if, post-petition, the debtor fails to reinvest the proceeds within the time frame permitted by the state exemption, the exemption expires. Thus, the snap-

---

[8] "The "snap-shot" doctrine is a well-known bankruptcy principle, calling to mind the image of a photograph or still-picture where the subject depicted is frozen in time and unchanging. The snap-shot doctrine provides that the rights of the debtor, and the facts and circumstances that undergird those rights, are locked in as of the petition date. A bankruptcy filing is a temporal event that serves to divide a debtor's assets, liabilities, financial transactions and transfers between those that exist or occur before the filing and those that come into existence or occur after the filing. Different treatment is accorded those assets, liabilities, transactions and transfers depending on which side of the line they fall. For most purposes, it makes sense to use the petition date as the point of separation." In re Stewart, 452 B.R. 726, 738–39 (Bankr. C.D. Ill. 2011).

8

shot is a partial one and not everything is fixed precisely as of the filing date. From this perspective, the proceeds must lose their exempt status if not reinvested in the relevant statutory period and then would be available to the chapter 7 trustee to administer. In re Zibman, 268 F.3d 298 (5th Cir. 2001) provides an example of this view. There, the chapter 7 debtors sold their residence two and one-half months before filing for bankruptcy relief. They did not reinvest the cash proceeds from that sale in a residence within six months as required by the Texas exemption law. The court concluded: "The Texas statute that provides an exemption for proceeds from the sale of a homestead contains a temporal element that explicitly limits the exemption to six months. When the Zibmans failed to reinvest the proceeds in another Texas homestead within the statutory time period, those proceeds lost their exemption, freeing the Trustee to reach the proceeds as part of the bankruptcy estate." Id. at 305 (footnotes omitted). The court noted that "the law and facts existing on the date of filing the bankruptcy petition determine the existence of available exemptions, but . . . it is the *entire* state law applicable on the filing date that is determinative." Id. at 304 (emphasis in the original). Ignoring the debtors' post-petition failure to reinvest the proceeds within the six month term would, according to the Zibman court, eliminate an integral aspect of the Texas homestead exemption for proceeds – the requirement of reinvestment in a residence within six months, and would ignore the purpose of the temporal limits of the proceeds law — "[t]he object of the proceeds exemption statute was solely to allow the claimant to invest the proceeds in another homestead, not to protect the proceeds, in and of themselves." Id. at 305 (quotations and emphasis omitted).[9]

---

[9] See e.g., In re Williams, 515 B.R. 395, 409 (Bankr. D. Mass. 2014) ("[A] state law exemption defined by an innate temporal limitation shall expire pursuant to that limitation notwithstanding an intervening bankruptcy."); In re Stewart, 452 B.R. 726, 745 (Bankr. C.D. Ill. 2011) ("[T]his Court holds that the exemption should be allowed if the debtor reinvests the proceeds within the one-year period, but denied if reinvestment does not occur even though this determination must be made based upon what does or does not occur postpetition."); In re Jacobson, 676 F.3d 1193, 1199 (9th Cir. 2012) (Court held that the debtor received the proceeds subject to a reinvestment condition and that the proceeds could thus lose their exempt status once the reinvestment period lapsed.).

9

The partial snap-shot view is not universal. Other courts reason that the snap-shot must be complete and that the exemption in proceeds is fixed as of the filing date, and if the statutory time frame requiring reinvestment has not expired prior to the filing of the chapter 7 case the exemption is forever preserved, notwithstanding the post-petition passage of time and failure to reinvest. In re Thomas, BKY MER 17-43367, 2018 WL 3655654 (Bankr. D. Minn. July 31, 2018), provides a recent example of this. In Thomas, the debtor sold her residence before filing for chapter 7 relief and claimed proceeds from the sale exempt under Minnesota's homestead exemption laws. The chapter 7 trustee objected on the ground that Minnesota permitted proceeds to be exempt so long as they are reinvested in a residence within 12 months following the sale. Thus, the debtor must reinvest all of the proceeds in a residence or she would lose her exemption in them. The bankruptcy court held that the snap-shot rule limits the exemption to the circumstances in place at the time of filing, and that post filing activity should not impact the debtor's entitlement to exempt property.[10] "This Court aligns itself with those courts that have examined the 'snapshot rule' based on circumstances in existence as of the petition date to determine the lifespan of exemptions in a chapter 7 case. They would take that to mean that

---

[10] *See also* In re Awayda, 574 B.R. 692 (Bankr. C.D.Ill. 2017) (Post-petition developments do not impact the debtor's entitlement to a properly claimed exemption.); In re Snowden, 386 B.R. 730, 734 (Bankr. C.D. Ill. 2008) ("Courts interpreting Illinois exemption laws have traditionally followed a "snap-shot" rule holding that exemptions are determined as of the date of a case filing. . . Developments which occur after filing should not impact on the entitlement to an exemption properly claimed at filing."). In re Reed, 184 B.R. 733, 738 (Bankr. W.D. Tex. 1995). In Reed, prior to converting their chapter 11 case to one under chapter 7, the debtors sold their home and received a promissory note for some of its equity. After conversion, the note was paid and disbursed. The chapter 7 trustee commenced an adversary proceeding to recover the disbursements claiming that the proceeds of the note were estate property because the debtors did not reinvest the proceeds in accordance with the time limitations of the relevant Texas homestead exemption. The court held that "a postpetition transformation of exempt property into a form of property which would not be exempt under state law does not return the property to the estate." Id.

The Reed holding is not the same as that here in Mr. Rockwell's case. Reed does not hold that "proceeds of the disposition of exempt property are therefore also 'exempt'". Id. at n. 7. Rather, once property is removed from the estate it can never be restored to the estate and the conversion of exempt property into non-exempt property does not change that result. Id.

10

generally what happens after filing should not impact on the entitlement to an exemption properly claimed at filing." Id. at 3 (citations and quotations omitted).

In considering both of these approaches, this court is aware that either is viable and both have flaws,[11] but nonetheless concludes that the complete snap-shot view more faithfully adheres to the Code, First Circuit authority, and the practicalities of administering a chapter 7 case.

First, determining that the exemption in the property is frozen as of the filing date, notwithstanding the failure of the debtor to reinvest those proceeds within six months, when that six months date expires after the filing date is in accord with § 522(c) and (k). Section 522(c) states that "property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case . . .".[12] Pasquina v. Cunningham (In re Cunningham), 513 F.3d 318, 324 (1st Cir. 2008) ("By the plain language of the statute, exemptions under § 522(c) persist beyond the termination of the case, making the property subject to an exemption unavailable for the satisfaction of pre-petition debt (other than for the categories of debt noted in § 522(c) itself)."). Section 522(k) provides that with the exception for certain avoidance costs set forth in § 522(k)(1) and (2), "[p]roperty that the debtor exempts under this section is not liable for payment of any administrative expense." Law v. Siegel, 571 U.S.

---

[11] "Ultimately, the arguments in favor of either result seemingly devolve into circularity. Courts inclined to permit a temporal limitation find no conflict between a state exemption statute and the Bankruptcy Code because 11 U.S.C. § 522(c) only applies to "exempted" property, which according to the state's definition of the exemption in effect on the petition date, the property will eventually cease to be by operation of law. On the other hand, courts that find a conflict arising from temporal limitations construe 11 U.S.C. §§ 522(b)(1), (3), and (c) to mean that property claimed exempt pursuant to a (sic) an exemption available on the petition date is "exempted under this section," and forever removed from the estate."

In re Williams, 515 B.R. at 408.

[12] Although there are exceptions to this, § 522(c)(1-4) and § 522(k)(1-2), none are relevant here.

11

415, 422 - 23 (2014) ("The Bankruptcy Court thus violated § 522's express terms when it ordered that the $75,000 protected by Law's homestead exemption be made available to pay Siegel's attorney's fees, an administrative expense. In doing so, the court exceeded the limits of its authority under § 105(a) and its inherent powers."). These subsections mean that, once property is exempted and is no longer part of the bankruptcy estate, the Code specifically insulates it from the reach of pre-petition creditors or administrative claimants (with limited exceptions). Applying the partial snap-shot view and thus permitting the expiration of exemptions post-petition would create a subset of ephemeral exemptions which impermissibly would allow previously exempt property to be liable for pre-petition debts and administrative expenses, in contravention of § 522(c) and § 522(k). See, Owen v. Owen, 500 U.S. at 308 ("Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts.").

Second, permitting the estate to be supplemented by the cash proceeds because of a post-conversion transformation of the property runs counter to § 541(a) and the framework of chapter 7. The starting point to determine the extent of estate property in a chapter 7 case is the commencement date. *See* § 541(a)(5) ("[The bankruptcy] estate is comprised of all the following property, wherever located and by whomever held . . .[a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition . . .").[13] Though there are a few exceptions to this general rule in chapter 7

---

[13] In contrast, estate property in a chapter 13 case includes all of the property specified in § 541 and property and earnings the debtor acquires after the commencement of the case but before it is closed, dismissed, or converted. § 1306(a).

cases,[14] they are limited enactments by Congress designed to address specific and discrete exceptions.

> The examples cited include certain postpetition claims being treated as though they arose on the petition date, some property becoming property of the estate if the debtor becomes entitled to it within 180 days postpetition, and actions to recover preferences and fraudulent transfers that have look-back periods ranging from ninety days to two years. Id. (citing 11 U.S.C §§ 502, 541(a)(5), 547, 548). The examples cited, however, are all express provisions of the Code in which Congress explicitly directed bankruptcy courts to calculate deadlines or look at circumstances arising at some time other than the petition date. These limited, enumerated exceptions do not support the claim that the general rule of evaluating property of the estate and claims of exemptions as of the petition date is discretionary.
>
> In re Awayda, 574 B.R. at 696.

The existence of several limited exceptions does not undermine the general rule that the chapter 7 estate is captured at the commencement of the case and the exemptions defined at that time are immutable despite post-petition events.[15]

Third, the complete snap-shot approach coexists with the holding of In re Cunningham, 513 F.3d 318 (1st Cir. 2008), which, though not specifically on point because the exemption at issue was not a vanishing exemption, provides helpful and relevant guidance. In Cunningham, a

---

[14] The bankruptcy estate also includes (1) property which a debtor receives or is entitled to receive within 180 days of the bankruptcy filing from inheritances, property settlements in divorces, and life insurance benefits, (§ 541(a)(5)(A), (B) and (C)); (2) proceeds, product, offspring, rents or profits (other than the earnings of individuals) from property of the estate (§ 541(a)(6)); (3) property that the estate acquires post-filing (§ 541(a)(7)); and (4) recoveries of preferential and fraudulent transfers (§§ 547 and 548).

[15] See also In re Reed, 184 B.R. 733, 737–38 (Bankr. W.D. Tex. 1995) ("The majority of courts, however, hold that a postpetition change in the character of property properly claimed as exempt will not change the status of that property, relying on the principle that once property is exempt, it is exempt forever and nothing occurring postpetition can change that fact; Peterson, 897 F.2d at 937 (debtor's postpetition death did not cause his homestead exemption to lapse); Payne, 775 F.2d at 204 (insurance proceeds of destroyed exempt property did not become property of the estate); Lasich v. Estate of A.N. Wickstrom (Matter of Wickstrom), 113 B.R. 339, 343–44 (Bankr. W.D. Mich.1990) (debtor's postpetition death did not cause exempt worker's compensation proceeds to lapse); In re Whitman, 106 B.R. 654, 656–57 (Bankr. S.D. Cal.1989) (conversion of homestead to proceeds postpetition does not cause proceeds to become property of the estate); In re Harlan, 32 B.R. 91, 92–93 (Bankr.W.D.Tex.1983) (same). The thrust of these cases is that property which is deemed to be exempt is deemed, as of that point, no longer to be property of the estate, so that its subsequent transformation does not restore it to the estate.").

creditor holding a state court judgment against a chapter 7 debtor filed a motion in state court seeking a determination that the debtor's exemption in certain homestead property would expire upon the post-petition sale of the house and the resulting conversion of the debtor's interest in the homestead into cash proceeds.  Id. at 322.  The United States Court of Appeals for the First Circuit affirmed the decision below and held that the proceeds were exempt.  Id. at 325. The debtor's homestead exemption claim, which survived a challenge by the judgment creditor, permanently immunized the homestead from pre-petition debts by removing the proceeds from the bankruptcy estate.  Id. at 324.  The Cunningham court held that § 522(c) did not confer a conditional exemption subject to post-petition events. To hold otherwise, the court noted, would undermine the basic principle that the bankruptcy law exemptions are determined when a petition is filed and that a debtor is entitled to a fresh start permitting a debtor to rebuild his life without fear of tarrying creditors.  Id.

Advocates of the partial snap-shot approach caution that "freezing" exemptions at the time of filing and applying the complete snap-shot approach results in the expansion of a state created exemption from a temporary exemption, requiring reinvestment within an allotted time, to a permanent exemption.[16]  While that may be, so such a result is not only permitted but required. In re Weinstein, 164 F.3d 677, 683 (1st Cir. 1999) (Massachusetts homestead statute was preempted by the Code to the extent that the state statute conflicted with the Code); In re Leicht, 222 B.R. 670, 680 (B.A.P. 1st Cir. 1998) ("In the exemption arena, federal courts have, time and again, concluded that the federal fresh start principles promulgated in § 522(c) override

---

[16] At least one court reasons that is not so. "The Bankruptcy Code does not 'change' the state exemption in homestead proceeds into a 'permanent' exemption one, since the exemption for bankruptcy purposes only affects pre-petition creditors. Post-petition creditors are not bound by the debtor's discharge, and therefore if the Debtors fail to reinvest the proceeds in a new homestead, their post-petition creditors could seek to collect against the proceeds." In re Lantz, 446 B.R. 850, 859 (Bankr. N.D. Ill. 2011).

14

state law exemption limitations, even definitional limitations. . . . Indeed, the 1994 amendments to § 522(f) make it clear that Congress intended a debtor's exemptions (whether state or federal law in their source) to operate in particular, federal-law-ways to advance the policies embodied in the bankruptcy fresh start."); In re Dubois, 306 B.R. 423, 428 (Bankr. D. Me. 2004).[17]

**VI. Conclusion.**

For these reasons, this court concludes that in order to protect the integrity of the Code (*e.g.* § 522(c), § 522(k), § 541) and to follow the guidance of Cunningham, the complete snapshot rule should be applied. Therefore, the chapter 7 trustee's objection to Mr. Rockwell's homestead exemption is overruled. The cash proceeds from the sale of the B Street property that remained in Mr. Rockwell's control as of the conversion date ($28,693.77) are exempt and beyond the reach of the chapter 7 trustee, notwithstanding Mr. Rockwell's failure to reinvest them within six months of the sale of his homestead.[18]

A separate order shall enter.

---

[17] Though not determinative of the conclusion reached by the court, there is also a pragmatic reason against adopting the partial snap-shot approach. "If the rule were that property must maintain its exempt status until case closure, chapter 7 trustees would be incentivized to keep cases open as long as possible and to run out the clock on homestead proceeds exemptions and other exemptions with built-in time limits. Trustees might also hold cases open, waiting to see if debtors sell exempt property or withdraw funds from exempt accounts, only to seek turnover of proceeds or funds once converted to a non-exempt state. No policy is served by encouraging such activities, and the impact would be impractical, inefficient, and contrary to the Code's command that trustees close cases "expeditiously." 11 U.S.C. § 704(a)(1)." In re Awayda, 574 B.R. at 697. Other courts have found this "concern too speculative" and unpersuasive. In re Jacobson, 676 F.3d 1193, 1200 (9th Cir. 2012).

[18] Given this holding, the court does not need to address Mr. Rockwell's other arguments, including whether 14 M.R.S.A. § 4422(c)(1) permits a debtor to invest in property in which he has no ownership interest or whether moving expenses or tree removal expenditures constitute "reinvestment" in a residence.

15